

Conserving the Peace

# SHERIFF
## WASHINGTON COUNTY
Pat Garrett, Sheriff

# Memorandum

| | |
|---|---|
| **DATE:** | TBW |
| **TO:** | Sheriff Pat Garrett (via Chief Deputy Shawn Fischer) |
| **FROM:** | Lt. John R. Black; Lead Investigator |
| **RE:** | IA2015-0004; N. Markos |

## *Overview*

    This memorandum documents a complex internal affairs (IA) investigation related to potential WCSO and Washington County policy violations. The investigation spans dates ranging from April 2015 to September 2016. Additionally noted is that the investigation itself considered events related to potential policy misconduct occurring, and some cases, going back approximately six years. Due to the sensitivity of the allegations being investigated, a single investigator was utilized (Lt. John R. Black) as a means to compartmentalize and protect victims and employees rights and to prevent any potential stigmatization. It should be noted that Lt. Black is a trained internal affairs investigator, served as an IA sergeant for over three years, and also oversaw the Services Division which houses professional standards and internal affairs for well over three years. Lt. Black is currently assigned as the investigations Lt. (West) and has been so for over six years. Lt. Black is thoroughly familiar with the constraints, requirements, and sensitivity of conducting both criminal and internal affairs investigation.

    Subsequently, Lt. Black served as the primary investigator as well as the primary point of contact (POC) with the PPB as related to this investigation. As shown by the below timeline, in April 2015, Lt. Black was directed by the Sheriff and then Chief Deputy (CD) Bill Steele (who has been replaced by CD Shawn Fischer when he was recently selected to be the police chief of the Tualatin Police Department) to start an initial investigation in reference to the alleged misconduct communicated to them via an initial email to the Sheriff and the Oregonian in April, 2015. Alleged in this initial email was the accusation that multiple employees of the WCSO had engaged in conduct, that if proven to be true, could be considered criminal in nature as well as potential violations of WCSO policies and Washington County rules and regulations.



Between April 17, 2015 and April 21, 2015, Lt. Black conducted a series of initial interviews to determine whether there was any merit in the allegations proposed within the initial email as well as to ensure the safety of any persons/employees that could be considered victims of inappropriate behavior. From the initial interviews, Lt. Black concluded there was at a minimum reasonable suspicion to conduct further investigations into potential criminal conduct as well as internal policy violations. Lt. Black reported these conclusions through the chain of command and a determination was made to enlist the aid of PPB to assist with both the criminal and potential future internal affairs investigations. The use of PPB was due to the need for transparency, the potential conflicts inherent in WCSO investigating and potentially bring criminal charges against WCSO deputies, and the large number of persons implicated as either actors/suspects or victims/witnesses. On April 22, 2015 PPB Detectives Myers and Wollstein were assigned as the primary criminal investigators for the related criminal investigations. Additionally, on April 22, 2015 Detectives Wollstein and Myers met with Lt. Black and the WCSO chain of command. Lt. Black briefed the PPB Detectives and then gave them digital copies of all prior conducted interviews as well as additional employee information and a digital flowchart of the current state of the investigation. At this time, Lt. Black was directed to suspend any and all internal investigations in order to allow the criminal investigations of PPB to be conducted. However, Lt. Black was also directed to assist the criminal investigators to provide them with any information they should need, the arranging of potential interviews, and to act as a liaison for PPB and their criminal investigation. It is important to note that the initial criminal investigation was a single investigation by PPB involving multiple actors/subjects, investigating multiple crimes, involving multiple related victims and witnesses, and that many of the actors, victims and witnesses were interrelated or involved in more than one incident.

PPB submitted their initial investigation to the Multnomah County district attorney in September 2015. Subsequently, criminal investigation and prosecution continued as related to the PPB investigation until July 2016 by which time D. Cardinal, D. Berquist, and J. Christensen had all resigned from the WCSO as well as pled to and resolved their individual criminal matters. J. Christensen was not sentenced until September 2016. In preparation for the transition from criminal to internal affairs investigation, Lt. Black began to meet with the PPB Detectives on February 10, 2016 as they approached the end of their active investigations of their criminal cases related to the future IA investigation.



Due to the comprehensive and exhaustive nature of the PPB investigations (resulting in well over 1800 pages of evidence), Lt. Black proceeded to do an initial review in order to plan for, assign, delegate, and conduct the needed internal investigations indicated by the initial criminal investigation. On March 8, 2016, Lt. Black met with Detective B. Renna of the PPB IA Division who was then assigned as the lead PPB IA investigator to assist Lt. Black and began to coordinate future IA investigations.

On/around March 23, 2016, Lt. Black was provided digital, and related physical evidence of the criminal investigations related to D. Cardinal, D. Berquist, J. Christensen, and N. Markos. Noted is that due to the sensitivity of the information provided, Lt. Black provided a copy to County Counsel Elmer Dickens. Currently, the only two copies of the criminal investigative record of PPB as well as the IA investigative record for this IA investigation (and related IA investigations) exist with Lt. Black and Elmer Dickens. These initial reports were reviewed for potential misconduct. When appropriate, either SRIMs or IAs were initiated, and to date this investigation has resulted in XX SRIM or IA investigations in addition to the criminal prosecution of three former WCSO employees. Between March 28th and April 14th an initial review of all reports/evidence was completed by Lt. Black.

On April 15, 2016, an internal meeting involving Lt. Black and WCSO command was conducted in order to determine the way ahead and provide guidance for the subsequent internal affairs investigations. It was decided by WCSO command that Detective Renna would assist Lt. Black with any of the more severe allegations of policy misconduct and that the lower levels of potential policy misconduct indicated would be assigned to other investigators within the WCSO. Detective Renna and Lt. Black's primary focus would be on the potential misconduct of N. Markos.

Subsequent to the ongoing IA investigation of N. Markos, several other outcomes occurred in tandem. First, additional and related IA investigations were started stemming from the overarching IA investigation of N. Markos. Second, additional related supervisor related inquiry memos (SRIM's) were also initiated. Finally, a criminal investigation (not related to the initial criminal investigation by PPB) on N. Markos was initiated, which was/is handled by the original PPB criminal investigators and remains pending to date. These subsequent and related investigations as well as the primary investigation of IA2015-0004 involved additional interviews, review of additional evidence, and additional coordination. Ultimately, the related and intertwined investigation documentation resulted in over 3,300 pages of reports and evidence.



In August and September 2016, during the ongoing IA investigation of N. Markos, several key interviews produced critical evidence as related to the allegations. These interviews (primary witnesses of S. Parrish and K. Marsden) were transcribed and are included within this case file. Subsequent to these interviews, due to the breadth and scope of potential misconduct by N. Markos, it was decided that some of the most potentially egregious aspects of misconduct would be investigated first, while additional potential misconduct could be reassigned to alternate investigators as their own individual and separate internal affairs investigations if warranted. This memorandum deals with N. Marko's potential misconduct related to untruthfulness, failure to act on known criminal behavior, and the related concepts of potential negligence in the duty to enforce laws as well as negligent performance of duties.

It should be noted that this case file includes both materials and interviews related to the potential proof of the allegation of misconduct as well as potentially exculpatory materials or interviews. However, also noted is that due to the extensive and intertwined nature of the IA investigations, and the fact that some IA investigations are still active, not every transcript, piece of evidence, or interview is included.

**Timeline:**

The following timeline is offered. The timeline reflects key dates related to or that impacted this investigation. Dates depicted are as accurate as possible in the timeline and does not contain all dates related to this investigation.

| 2015 | | |
|---|---|---|
| 1. | Initial email to Sheriff alleging misconduct | April 17, 2015 |
| 2. | Start of initial internal investigation (SRIM) | April 17, 2015 |
| 3. | Assignment of initial investigators for IA2015-0004 | April 30, 2015 |
| 4. | IA Notice to N. Markos (Prior to criminal investigation) | April 30, 2015 |
| 5. | Hand off to Portland Police Bureau (PPB) to address potential criminal investigation/internal affairs (IA) investigation. Initial primary subjects are D. Cardinal, J. Christensen, D. Berquist, and N. Markos | April 22-30, 2015 |
| 6. | Termination of J. Christensen | August 12, 2015 |



**2016**

| | | |
|---|---|---|
| 7. | Resolution of criminal case; D. Cardinal | January 21, 2016 |
| 8. | PPB criminal investigations mostly complete; IA investigation planning/coordination (WCSO & PPB investigators) | February 10, 2016 |
| 9. | Resignation of D. Berquist | March 18, 2016 |
| 10. | Resolution of criminal case; D. Berquist | March 22, 2016 |
| 11. | WCSO coordinates with PPB for subsequent IA investigations stemming from criminal investigations | Start on March 8, 2016 |
| 12. | Digital copy of all evidence/reports from PPB to Lt. Black via both PPB IA unit and PPB detectives. | March 23, 2016 |
| 13. | Initial review of all reports/evidence | March 28-April 15, 2016 |
| 14. | Resignation of D. Cardinal | May 01, 2016 |
| 15. | IA Notice to N. Markos (Subsequent to Criminal investigation) | May 12, 2016 |
| 16. | Additional criminal investigation via PPB started on N. Markos | On/around May 23, 2016 |
| 17. | Parallel investigation started IA2016-0002 (active/ongoing) | June 03, 2016 |
| 18. | Plea to criminal case; J. Christensen | July 12, 2016 |
| 19. | Criminal Sentencing; J. Christensen | September 06, 2016 |
| 20. | Key interview; K. Marsden | September 09, 2016 |
| 21. | Key interview; S. Parrish | September 26, 2016 |
| 22. | Key interviews; N. Markos | September 21, 2016 & September 28, 2016 |

### Organization of this Document and Memorandum

This memorandum serves as a summary document for the internal affairs investigation of N. Markos. The entire case file is provided by means of an Adobe Acrobat E-portfolio allowing for ease of



navigation and access. The electronic case file contains digital copies of all reference interviews and transcripts, related IA correspondence, copies of policies and regulations in question, referenced or related evidence offered, and related criminal reporting. The electronic case file utilizes bookmarking and links as a means to access to any referenced or cited portion within specific interviews. The E-portfolio/case file is not intended to represent all aspects, evidence, or documentation of all related investigations.

   This memorandum is organized by first giving a general overview, followed by a summary of allegations. Allegations are broken down by the specific alleged policy in which a violation may or may not have occurred, then followed by the related investigation to the allegation, discussion, and finally a conclusion by the author, Lt. Black. This format is followed for each allegation. Following the summary of allegation section, any additional actions or related aspects of this investigation is documented. The primary author of this document is Lt. Black with full input from Detective Renna.