# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANGELA BRANFORD**, | Case No. 3:17-cv-94-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **WASHINGTON COUNTY, OREGON; PAT GARRETT; JONATHAN CHRISTENSEN; JOHN BLACK; CITY OF PORTLAND, OREGON; and JEFFREY MYERS**, | |
| Defendants. | |

Daniel Snyder, Carl Post, and John David Burgess, LAW OFFICES OF DANIEL SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Andrea Barraclough, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW 4th Avenue, Portland, OR 97204. Of Attorneys for Defendants City of Portland and Jeffrey Myers.

**Michael H. Simon, District Judge.**

Angela Branford, a Deputy Sheriff in the Washington County Sheriff's Office

("WCSO"), brings this lawsuit under 42 U.S.C. §1983, Title VII, and Oregon state law against

Washington County (the "County"); Washington County Sheriff Pat Garrett; WCSO employees

or former employees Jonathan Christensen and John Black; the City of Portland (the "City"); and

Portland Police Bureau Detective Jeffrey Myers. ECF 14 (First Amended Complaint). Before the Court are Myers's motion to substitute the City as the sole defendant for Plaintiff's state law claims against Myers (ECF 27) and the City's motion, joined by Myers, to dismiss all claims asserted against the City and Myers. ECF 16. For purposes of the pending motions only, the City and Myers are collectively referred to as "Defendants." For the reasons explained below, Defendants' motions are granted.

## BACKGROUND

In her First Amended Complaint, Plaintiff alleges the following facts. The Washington County Sheriff's Office tolerates, and subjects female employees to, sexual misconduct by male officers. ¶¶ 21, 22. During or before 2014, Defendant Christensen, Plaintiff's training officer and supervisor, initiated a sexual relationship with Plaintiff, which continued intermittently for several years. ¶¶ 24, 25. Plaintiff tried to end the relationship with Christensen several times. Christensen responded by pressuring Plaintiff to continue a sexual relationship with him. ¶ 25. Christensen began stalking Plaintiff, including while on-duty, and used County resources to do so. ¶ 26. On or about March 7, 2015, after Plaintiff tried to break off the relationship, Christensen grabbed and choked Plaintiff at her home. ¶ 27. Christensen thereafter made explicit and implicit threats of further physical violence to coerce Plaintiff to have sexual intercourse with him. ¶ 28. Plaintiff initially did not report Christensen's assault or misconduct. Plaintiff was afraid to report Christensen to command staff at the WCSO because of the way other female employs had been treated after complaining of sexual harassment, the failure by the WCSO to discipline perpetrators of sex and gender discrimination, and because she feared retaliation. ¶ 29.

In April 2015, after a newspaper report published allegations of widespread sexual harassment of female Sheriff's Office employees, the WCSO began an in-house investigation.

¶ 30. During the investigation, Plaintiff was interviewed about Christensen. After Plaintiff's interview regarding Christensen, her workplace became increasingly hostile. ¶ 36.

The WCSO referred the investigation of Christensen to the Portland Police Bureau ("PPB"). Detectives Myers and Nathan Wollstein of the PPB were assigned to conduct the investigation of Christensen. ¶ 31. Myers met with Plaintiff and interviewed her at his office at PPB. During the interview, Myers requested Plaintiff's cell phone. Plaintiff did not want to give Myers her cell phone because it contained personal and intimate information not relevant to any investigation. Myers promised Plaintiff that if she allowed him to copy the hard drive of her cell phone, a copy of the phone's hard drive would never be shared with anyone else. Myers told Plaintiff that anyone who needed to view the contents of her phone to prosecute Christensen would only be permitted to do so at Myers's desk and would not receive a copy of its contents. As witnessed by Wollstein and victim advocate Susan Lehman, Myers told Plaintiff, "No one will get a copy of your phone." ¶ 32.

On May 19, 2016, Plaintiff was again subjected to sexual harassment by a WCSO officer, Justin Ulrich. ¶ 37. On May 23, 2016, Plaintiff met with Defendant Garrett and Defendant Black. At the time, Defendant Black was the commander in charge of the WCSO internal affairs section. Plaintiff told Garrett and Black about Ulrich's misconduct. ¶ 38. During that interview, Black said to Plaintiff, "So I am going to ask you. What kind of relationship did you have with Ulrich?" Plaintiff responded, "We did not have a relationship." Black replied, "Are you sure you don't text each other? Do you Facebook?" Black tried to get Plaintiff to say that she had a personal relationship with Ulrich when, in fact, none existed. ¶ 38.

Two days later, on May 25, 2016, Plaintiff was asked to meet with Myers regarding another investigation of a different WSCO officer, Nick Markos. During this meeting, Myers

revealed that, contrary to his earlier express promise not to allow anyone to copy the data that he extracted from Plaintiff's cell phone the prior year, he had given PPB Internal Affairs a copy of that data. Myers also informed Plaintiff that PPB Internal Affairs had then given a copy to WCSO Internal Affairs and that Defendant Black had the contents of all of the data from her cell phone. In Plaintiff's presence, Myers and Black spoke by telephone regarding the issue, and Black explained that the County had the legal right to all of the contents of Plaintiff's cell phone and that Plaintiff had no rights. Black refused to return the WCSO's copy of the data taken from Plaintiff's cell phone. ¶ 39.

Between May 25, 2016, and August 15, 2016, Black sent a copy of the confidential data extraction from Plaintiff's phone to another County employee, Elmer Dickens. Dickens then sent a private investigator, Charles Faulk, a copy of the confidential data extraction. Faulk is not a County employee. Dickens directed Faulk to view the contents of the extraction, including Plaintiff's personal material unrelated to any criminal investigation. Faulk viewed the contents and may have deleted some of the contents. On August 22, 2016, Faulk sent Dickens four DVDs containing the data. ¶ 43.

Based on these allegations, Plaintiff asserts 14 claims for relief, five of which are brought against either the City of Portland or PPB Detective Myers. The first two claims for relief allege that the County discriminated against Plaintiff on the basis of her sex and gender, in violation of federal and state law. Claims three through six allege that the County violated Oregon statutes prohibiting whistleblower retaliation. Claim seven alleges that the County discriminated and retaliated against Plaintiff based on her status as a victim of domestic violence, harassment, stalking, and sexual assault.

Plaintiff's eighth claim alleges that the City of Portland and Myers "aided, abetted, incited, compelled, and coerced the unlawful employment practices of the County . . . against [Plaintiff] by providing her private and confidential information, the data extraction from her mobile telephone, to the County." ECF 14, ¶ 80. Plaintiff further alleges that the City and Myers violated Or. Rev. Stat. § 659A.030(1)(g) and that their actions constituted an unlawful employment practice.

Plaintiff's ninth claim for relief, brought under 42 U.S.C. § 1983 against all Defendants except the City of Portland, alleges that Myers's procurement and copying of Plaintiff's cell phone and his distribution of its data violated Plaintiff's property rights and deprived Plaintiff of equal protection and due process in violation of the Fifth, Fourth, Sixth, and Fourteenth Amendments of the U.S. Constitution.

Plaintiff's eleventh claim is brought against the County, the City, and Myers. Plaintiff alleges that those Defendants invaded Plaintiff's privacy by knowingly and intentionally disseminating intimate visual recordings of images of Plaintiff, private emails, and private texts, knowing that Plaintiff had a reasonable expectation of personal privacy at the time the visual recordings were made or recorded. As a result, Plaintiff alleges, the data from Plaintiff's cell phone was provided to the County, Black, and other individuals—including a non-employee of the County—even though none of it was related to any legitimate business purpose of WSCO.

Plaintiff's twelfth claim alleges that the County, the City, and Myers breached their duty of confidentiality to Plaintiff by disclosing Plaintiff's private data to persons responsible for sexual harassment, physical injury, discrimination, and retaliation. Plaintiff's thirteenth and fourteenth claims allege battery and intentional infliction of emotional distress against the County and Christensen.

At all material times, Myers was a detective employed with the Portland Police Bureau. ¶ 20. Plaintiff alleges that the City and Myers each acted individually and jointly under color of state law to deprive Plaintiff of her civil rights, including her rights to life, liberty, and property. ¶¶ 19, 20.

Plaintiff asserts jurisdiction under 28 U.S.C. §§ 1331 and 1343, federal question and civil rights jurisdiction, respectively. Plaintiff requests that the Court invoke its supplemental jurisdiction under 28 U.S.C. § 1367 with respect to all causes of action based on Oregon state law, asserting that Plaintiff's state claims arise from the same nucleus of operative facts as her federal claims against the City and Myers. Plaintiff seeks money damages as well as equitable relief, including declaratory and injunctive relief against the City and Myers.

## DISCUSSION

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, --- U.S. ---, 133 S.Ct. 1059, 1064 (2013) (citation omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A motion to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.*

In her First Amended Complaint, Plaintiff asserts jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. Section 1331 provides for basic federal-question subject matter jurisdiction. *Arbaugh*, 546 U.S. at 513. "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Id*. Plaintiff concedes that she has not pled a colorable claim arising under federal law against the City; she brings only state law claims against the City. Section 1331, therefore, does not confer the Court with subject matter jurisdiction over the City. See *Williams v. United Airlines, Inc.*, 500 F.3d 1019, 1022 (9th Cir. 2007) (explaining that "general federal-question jurisdiction statute is applicable only when the plaintiff sues under a federal statute that creates a right of action in federal court").

Section 1343 provides, in relevant part, that district courts have original jurisdiction over civil actions commenced by any person:

> To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; [or]
>
> . . .
>
> To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. 1343(a). Because Plaintiff has failed to plead a violation of the Constitution or federal law by the City, original jurisdiction over the City is not available under §1343. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 n.4 (describing 28 § 1343(a)(3) as the "jurisdictional counterpart" to 42 U.S.C. § 1983); *Diehl v. Village of Antwerp*, 131 F.3d 130, 130 (2nd Cir. 1997) ("Plaintiffs' civil rights claim under 28 U.S.C. § 1343(a)(4) is dismissed for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), because plaintiffs

failed to allege a claim 'under any Act of Congress providing for the protection of civil rights.'"). Because Plaintiff does not allege that the City violated federal law, the Court lacks subject matter jurisdiction over the City on the bases asserted by Plaintiff.

Defendants argue that, because the Court lacks original jurisdiction over the City, the Court also lacks supplemental jurisdiction over the pendent state claims against the City. Defendants are incorrect. Under the circumstances presented here, the Court has the discretion to exercise supplemental jurisdiction over the pendent state claims against the City, even though the Court lacks original jurisdiction over any claim asserted against the City.

Section 1367 provides, in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.*

28 U.S.C. § 1367(a) (emphasis added). The plain text of the statute contemplates the conferral of supplemental jurisdiction over pendent claims against parties over which the Court has no original jurisdiction when a plaintiff has chosen to join those additional parties to the lawsuit. *Exxon Mobil Corp. v. Allapattah*, 545 U.S. 546, 558-59 (2005) (holding that "[t]he last sentence of §1367 makes it clear that the grant of supplemental jurisdiction . . . is a broad jurisdictional grant with no distinctions drawn between pendent-*claim* and pendent-*party* cases") (emphasis added). *See also Price v. Wolford*, 608 F.3d 698, 701 (10th Cir. 2010) (holding that, "[o]nce a district court has jurisdiction, additional claims *and parties* can be added under the supplemental jurisdiction statute") (emphasis added).

As the U.S. Supreme Court has held, pendent state claims are part of an Article III controversy when the pendent claims "derive from a common nucleus of operative fact." *City of*

*Chicago v. Int'l Coll. of Surgeons*, 552 U.S. 156, 164-165 (1997) (quoting *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (quotation marks omitted; brackets in original); *accord Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1173 (9th Cir. 2002).

Defendants do not dispute that Plaintiff's state law claims are based on the same facts as her § 1983 claim against Myers, *i.e.*, the seizure and search of Plaintiff's cell phone and the dissemination of its contents. Nor do Defendants argue that the Court lacks original jurisdiction over Plaintiff's § 1983 claim against Myers. Because the pendent state law claims against the City derive from the same nucleus of operative facts as Plaintiff's §1983 claim against Myers, the Court has supplemental jurisdiction over those pendent state law claims. Defendant's motion to dismiss for lack of subject matter is denied.

Supplemental jurisdiction is, however, discretionary. Because the Court, for the reasons discussed below, concludes that Myers is immune from suit for damages by Plaintiff under § 1983, the Court loses original jurisdiction over Myers and, therefore, declines to exercise supplemental jurisdiction over Plaintiff's state law tort claims against the City. For reasons of "economy, convenience, fairness, and comity," the Court views the state court as the proper decision-making body over these claims involving Oregon law. 28 U.S.C. § 1367(c) (court may decline to exercise supplemental jurisdiction when claim raises "novel or complex issue of State law" or it "has dismissed all claims over which it has original jurisdiction"); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (commenting that values of economy, convenience, fairness, and comity inform the decision to decline to exercise supplemental jurisdiction over state law claims). In addition, Plaintiff's claims against the City (and Myers) are sufficiently distinct from Plaintiff's claims against the WCSO defendants that it is not unfair to Plaintiff to deny her the opportunity to resolve both sets of claims in this forum and lawsuit.

## B. Motion to Substitute Party

Defendant Myers moves to dismiss Plaintiff's state law claims against him and to substitute the City as the sole defendant for those claims. Myers argues that, under the Oregon Tort Claims Act ("OTCA"), such substitution is mandatory. Plaintiff does not oppose the motion.

The OTCA affords the "sole cause of action for any tort committed by officers, employees, or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification" by the public body. ORS § 30.265(2). The OTCA bars actions against individual tortfeasors acting within the scope of their public employment and provides that the court upon motion will substitute the public body as the sole defendant. ORS § 30.265(3).

Plaintiff's claims against Myers for aiding and abetting, invasion of privacy and breach of confidentiality are covered by the OTCA, ORS § 30.260 to 30.300. Plaintiff does not allege that Myers was working outside the scope of his employment or duties. The OTCA provides Plaintiff with the sole cause of action for her state law claims brought against Myers. The Court, therefore, dismisses those claims and substitutes the City for Myers.

## C. Motion to Dismiss based on Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 134 S.Ct. 2056, 2066-67 (2014); *Krainski v. Nevada ex. Rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were

clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866

(2017) (citation omitted) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

819 (1982) and *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "The privilege is an *immunity*

*from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously

permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks omitted)

(emphasis in original). For this reason, the Court has "stressed the importance of resolving

immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224,

227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for

damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police*

*Protective  League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In *Saucier*, the Supreme Court outlined a two-step process for determining the

applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine

"whether a constitutional right would have been violated on the facts alleged." *Id*. The second

step is to determine "whether the right was clearly established." *Id*. The constitutional issue,

however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. Regardless of

whether the constitutional violation occurred, the officer should prevail if the right asserted by

the plaintiff was not clearly established or the officer could have reasonably believed that his

particular conduct was lawful. *Romero v. Kitsap Cty*., 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a government official's conduct violates clearly established law, "a

court must ask whether it would have been clear to a reasonable officer that the alleged conduct

was unlawful in the situation he confronted." *Ziglar*, 137 S.Ct. at 1867. To be clearly established,

"[i]t is not necessary . . . that the very action in question has previously been held unlawful. That

is, an officer might lose qualified immunity even if there is no reported case directly on point.

But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent. *Id.* (citations and quotation marks omitted). "The 'clearly established' requirement 'operates to ensure that before they are subject to suit, [government officials] are on notice their conduct is unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (alteration in original). Thus, the key inquiry in determining whether an officer has qualified immunity is whether the officer had "fair warning" that his conduct was unconstitutional. *Hope*, 536 U.S. at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law need not be a "precise formulation of the standard" as long as "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand"); *Ellins*, 710 F.3d at 1064 ("Rather, the relevant question is whether 'the state of the law at the time gives officials fair warning that their conduct is unconstitutional.'" (quoting *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc) ("[T]he specific facts of previous cases need not be materially or fundamentally similar to the situation in question."))).

The plaintiff bears the burden of making a showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). When considering whether qualified immunity applies, the court must resolve all factual disputes in favor of the party asserting the injury. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013).

Plaintiff alleges that Myers violated Plaintiff's right to privacy under the Fourteenth Amendment when Myers distributed the contents of Plaintiff's cell phone without her consent, and indeed in violation of his alleged promise to her. These contents allegedly include intimate photographs of Plaintiff that are not relevant to any investigation. Defendants argue that

Plaintiff's claim against Myers under § 1983 fails because Myers is entitled as a matter of law to qualified immunity both because his actions were constitutionally permissible and because no reasonable law enforcement officer would have been on notice that distributing to other law enforcement officers the contents of Plaintiff's cell phone, after Plaintiff voluntarily provided her phone to Myers as part of his investigation, was unconstitutional. Plaintiff responds that Myers does not have qualified immunity because any reasonable law enforcement officer would have known that distributing Plaintiff's private, personal, intimate, and irrelevant photographs and other private, personal, and intimate information and data without her consent to the same Sheriff's office against which she alleges sex discrimination would violate her Fourteenth Amendment right to privacy. For the reasons the follow, the Court concludes that Plaintiff has failed to meet her burden of showing that Myers violated a clearly established a constitutional right of privacy.

In 1977, the United States Supreme Court recognized a constitutional privacy interest in "avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 457 (1977). This type of privacy interest is often referred to as "informational privacy." Although government "accumulation" of "personal information" for "public purposes" may pose a threat to privacy, "statutory or regulatory duty to avoid unwarranted disclosures" generally allays these privacy concerns. *Whalen*, 429 U.S., at 605; *see also Nixon*, 433 U.S., at 457-458.

In 2011, the Supreme Court again addressed the concept of informational privacy. In *National Aeronautics and Space Administration v. Nelson*, 131 S.Ct. 746 (2011), the Supreme Court declined to decide whether there is a right to informational privacy protected by the Constitution and, if so, what its scope may be, and, for purposes of the decision, assumed

without deciding that the conduct at issue implicated a constitutionally-protected privacy right. *Id.* at 751, 756-57. The Supreme Court noted, however, that many courts have held under *Whalen* and *Nixon* (including the Ninth Circuit), "that disclosure of at least some kinds of personal information should be subject to a test that balances the government's interests against the individual's interest in avoiding disclosure." *Id.* at 756 n.9. The Supreme Court concluded that NASA, as a "proprietor," could require certain contractors' employees to complete a background form that compels disclosure of any illegal drug use and any counseling or treatment for illegal drug use and could ask the employee's references and landlords broad questions, including those relating to finances, drug and alcohol use, and mental and emotional stability. *Id.* at 753, 756-57. The Court held that the information requested by NASA was reasonable in light of the governmental interests at stake and that any threat to privacy was allayed because the federal Privacy Act provides sufficient safeguards against unwarranted disclosure. *Id.* at 761.

The Ninth Circuit has since held that the informational privacy right "'applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such information will not be made public.'" *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (quoting *Planned Parenthood v. Lawall*, 307 F.3d 783, 789-90 (9th Cir. 2002)). This right, however, "is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Id.* (quoting *Lawall*, 307 F.3d at 790). The Ninth Circuit instructs courts "to decide 'whether the governmental interest in obtaining information outweighs the individual's privacy interest.'" *Seaton v. Mayberg*, 610 F.3d 530, 538 (9th Cir. 2010). In making the determination, courts may:

> balance the following factors to determine whether the
> governmental interest in obtaining information outweighs the
> individual's privacy interest: (1) the type of information requested,
> (2) the potential for harm in any subsequent non-consensual

disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Eden*, 379 F.3d at 551. This list is not exhaustive, and in most cases it will be the "overall context . . . that will dictate the tipping of the scales." *Seaton*, 610 F.3d at 538 (quoting *Ferm v. U.S. Trustee (In re Crawford)*, 194 F.3d 954, 959 (9th Cir. 1999)). Based on the fact that the right to informational privacy is only conditional and may properly be infringed upon consideration of the government's interests under the totality of the circumstances, the Court concludes that Myers reasonably could have believed that his conduct in securing the contents of Plaintiff's cell phone and then providing a copy of that data to other law enforcement officers was lawful.

Plaintiff relies on *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963), to support her argument that any reasonable law enforcement officer would have known that Myers's conduct in obtaining and then distributing Plaintiff's private information to other law enforcement officers would violate Plaintiff's constitutional right to informational privacy. In *York*, the Ninth Circuit held that under a sexual assault victim's right to bodily privacy was violated by a police officer who directed the victim to disrobe, photographed the victim in sexually suggestive poses that were unnecessary and unrelated to the investigation, and later distributed the photographs among the police department for no apparent and legitimate law enforcement purpose. *Id*. at 455. *York*, however, presents a much more egregious factual scenario than is found in the pending case.

Further, the Ninth Circuit has cautioned against construing the right to informational privacy too broadly. In *Davis v. Bucher*, 853 F.2d 718, 719-20 (9th Cir. 1988), the plaintiffs were an inmate and his wife. They sued a state prison guard under § 1983 after the guard viewed and

shared nude photos of Mrs. Davis. During the course of transferring Mr. Davis from one

correctional facility to another, Bucher inventoried Mr. Davis's possessions. Among those

possessions, Bucher found an envelope containing four nude photos of Mrs. Davis. Bucher

viewed the photographs himself and then showed them to two other inmates. The Ninth Circuit

affirmed the district court's conclusion that no right of privacy existed under the circumstances.

*Id.* The Ninth Circuit held:

> The Davises seek a broad construction of that right. Their theory is
> that the Fourteenth Amendment houses an interest in avoiding the
> unconsented and unwarranted disclosure of intimate photographs
> by the state, and that this interest was violated by Bucher's conduct
> in exhibiting the photos to others . . . This theory cannot be
> sustained.

*Davis*, 853 F.2d at 719–20.

The Ninth Circuit also noted that "the Supreme Court has repeatedly cautioned federal

and state courts against enlarging the 'commodious' contours of section 1983 and the Fourteenth

Amendment so as to displace state tort law." *Id*. at 720 (citations omitted). The Ninth Circuit,

"assuming that the Constitution protects against state disclosures of personal information in some

instances," nevertheless concluded that "the injury alleged by Davis is not one of constitutional

magnitude." *Id.*at 720. The Ninth Circuit in *Davis* then distinguished the Supreme Court's

decision in *York*:

> Bucher's conduct was tasteless, unwise, and unwarranted, but this
> is not the despicable and outrageous abuse of official power and
> invasion of carefully guarded personal modesty presented in *York
> v. Story*. There, under color of state law, the police persuaded an
> objecting assault victim that unnecessary naked and suggestively
> posed photos were crucial to preserve evidence of the crime for
> their investigation, took and copied the photographs, and widely
> circulated them in the department. Bucher's malefaction is simply
> not in that league.

*Davis*, 853 F.2d at 721 (citation omitted).

In light of *York* and *Davis*, the Court cannot conclude in this case that a reasonable law enforcement officer in Myers's position should have known obtaining and sharing the data contained within Plaintiff's cell phone violated a clearly established constitutional right of privacy. *See Baker v. Racansky*, 887 F.3d 183, 187 (9th Cir. 1989) (holding that "if the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered clearly established, at least in the absence of closely corresponding factual and legal precedent") (quotation marks omitted); *Moran v. State of Washington*, 147 F.3d 839, 847 (9th Cir.1998) (noting that the Ninth Circuit has recognized a "self-evident tenet of qualified immunity jurisprudence," namely, "the difficulty of divining clearly established legal principles from multifactor balancing tests"). As a result, the Court concludes that Myers is entitled to qualified immunity from suit by Plaintiff under 42 U.S.C. § 1983.[1]

## CONCLUSION

At the time Plaintiff filed her First Amended Complaint, the Court had original federal question jurisdiction over Myers based on Plaintiff's claim under 42 U.S.C. § 1983. The Court also had supplemental jurisdiction over the related state law claims asserted against the City. Plaintiff's state law claims, however, are only actionable under the Oregon Tort Claims Act, which requires that the City be substituted for Myers on those claims. Accordingly, the Court dismisses Myers from Plaintiff's state claims. In addition, the Court concludes that Myers is

---

[1] As discussed previously, qualified immunity does not apply to Plaintiff's claim for injunctive relief against Myers. In this case, Plaintiff has requested injunctive relief against Myers, as well as money damages, in her claim under § 1983. The Court has reviewed Defendants' representations regarding the current status of Plaintiff's cell phone data (ECF 38), which have not been disputed by Plaintiff. The Court concludes that either no claim for injunctive relief was available against Myers or, to the extent that such a claim might have been available before, it has been rendered moot by the City's current representations.

entitled to qualified immunity from suit for damages under § 1983 and that Plaintiff presents no cognizable claim under § 1983 for any other relief against Myers. Accordingly, the Court dismisses Plaintiff's § 1983 claim against Myers. Without a federal claim based on Defendants' conduct, the Court declines to exercise supplemental jurisdiction over the remaining state law claims against the City. Defendants' Motion to Substitute (ECF 27) and Motion to Dismiss (ECF 16) are GRANTED.

**IT IS SO ORDERED**.

DATED this 28th day of August, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge