IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ANGELA BRANFORD**, <br><br> Plaintiff, <br><br> v. <br><br> **WASHINGTON COUNTY, OREGON; PAT GARRETT; JONATHAN CHRISTENSEN; JOHN BLACK; CITY OF PORTLAND, OREGON; and JEFFREY MYERS**, <br><br> Defendants. | Case No. 3:17-cv-94-SI <br><br> **OPINION AND ORDER** |

Daniel Snyder, Carl Post, and John David Burgess, LAW OFFICES OF DANIEL SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Karen O'Kasey, HART WAGNER LLP, 1000 SW Broadway, Twentieth Floor, Portland, OR 97205. Of Attorneys for Defendants Washington County, Pat Garrett, and John Black.

Andrea R. Barraclough, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendants City of Portland and Jeffrey Myers.

Jonathan Christensen, *pro se*.

**Michael H. Simon, District Judge.**

Plaintiff Angela Branford ("Branford") is a Deputy Sheriff in the Washington County

Sheriff's Office ("WCSO"). Branford brings this lawsuit under 42 U.S.C. §1983, Title VII of the

Civil Rights Act of 1964, and Oregon state law against Defendants Washington County, Oregon ("Washington County" or the "County"); Washington County Sheriff Pat Garrett; WCSO employees or former employees Jonathan Christensen and John Black; the City of Portland (the "City"); and Portland Police Bureau Detective ("PPB") Jeffrey Myers. For purposes of this Opinion and Order, Defendants Washington County, Pat Garrett, and John Black are collectively referred to as "Defendants." Before the Court is Defendants' motion to strike six changes (or "corrections") that Plaintiff has made to her deposition testimony. For the reasons that follow, Defendants' motion is denied.

**BACKGROUND**

In her First Amended Complaint, Plaintiff alleges the following facts against Washington County, Pat Garrett, John Black, and John Christensen. The Washington County Sheriff's Office tolerates, and subjects female employees to, sexual misconduct by male officers. During or before 2014, Defendant Christensen, Plaintiff's training officer and supervisor, initiated a sexual relationship with Plaintiff, which continued intermittently for several years. Plaintiff tried to end the relationship with Christensen several times. Christensen responded by pressuring Plaintiff to continue a sexual relationship with him. Christensen began stalking Plaintiff, including while on-duty, and used County resources to do so. On or about March 7, 2015, after Plaintiff tried to break off the relationship, Christensen grabbed and choked Plaintiff at her home. Christensen thereafter made explicit and implicit threats of further physical violence to coerce Plaintiff to have sexual intercourse with him. Plaintiff initially did not report Christensen's assault or misconduct. Plaintiff was afraid to report Christensen to command staff at the WCSO because of the way other female employs had been treated after complaining of sexual harassment, the failure by the WCSO to discipline perpetrators of sex and gender discrimination, and because she feared retaliation.

PAGE 2 – OPINION AND ORDER

In April 2015, after a newspaper report published allegations of widespread sexual harassment of female Sheriff's Office employees, the WCSO began an in-house investigation. During the investigation, Plaintiff was interviewed about Christensen. After Plaintiff's interview regarding Christensen, her workplace became increasingly hostile.

On May 19, 2016, Plaintiff was again subjected to sexual harassment by a WCSO officer, Justin Ulrich. On May 23, 2016, Plaintiff met with Defendant Garrett and Defendant Black. At the time, Defendant Black was the commander in charge of the WCSO internal affairs section. Plaintiff told Garrett and Black about Ulrich's misconduct. During that interview, Black said to Plaintiff, "So I am going to ask you. What kind of relationship did you have with Ulrich?" Plaintiff responded, "We did not have a relationship." Black replied, "Are you sure you don't text each other? Do you Facebook?" Black tried to get Plaintiff to say that she had a personal relationship with Ulrich when, in fact, none existed.

## DISCUSSION

Defendants took Plaintiff's deposition on February 5, 2018. The court reporter delivered a transcript to Plaintiff's counsel on February 9, 2018. On March 2, 2018, Plaintiff's counsel served a Deposition Correction Sheet that contained thirteen changes to Plaintiff's deposition testimony. Defendants object to six of these corrections, arguing only that they are not correction of an error by the court reporter and thus not allowed under Rule 30(e) of the Federal Rules of Civil Procedure. Defendants do not argue that Plaintiff's changes were untimely or are a sham intended avoid summary judgment by attempting to create an issue of fact.

Rule 30(e) states:

> (1) *Review; Statement of Changes*. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

>>(A) to review the transcript or recording; and
>
>>(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.
>
>>(2) *Changes Indicated in the Officer's Certificate*. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

Fed. R. Civ. P. 30(e).

Nothing in the text of Rule 30(e) limits the types of changes that may be made by a witness before signing his or her deposition. Indeed, the rule expressly states that changes may be "in form or substance." Further, nothing in the rule limits the changes only to corrections of errors made by the court reporter. In addition, nothing in the rule advises that a judge must, or even should, examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes. *See Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997).

When a party amends his or her deposition testimony under Rule 30(e), however, the original answer to the deposition questions remains part of the record and can be read at the trial, either as substantive evidence against a party opponent (when applicable) or as impeachment evidence. *Id*. Nothing in the language of Rule 30(e) requires or implies that the original answers are to be stricken when changes are made. *Id*. Further, courts have recognized that because "[a]ny out-of-court statement by a party is an admission," a deponent's "original answer should [be] admitted [into evidence]" even when he or she amends his or her deposition testimony—with the deponent "[o]f course . . . free to introduce the amended answer and explain the reasons for the change." *Id*. (citing *Usiak v. New York Tank Barge Co*., 299 F.2d 808, 810 (2d Cir. 1962)). That means that the deponent is not entitled to have her altered answers take the place of the original ones and that his or her changed answers simply become part of the record generated during discovery. *Podell*, 112 F.3d at 103.

PAGE 4 – OPINION AND ORDER

There are two additional points that merit comment. First, When the deponent has made extensive or substantial changes to his or her testimony, the court may allow the deposition to be reopened (or a second deposition taken) so that the opposing party may thoroughly explore the reasons for the changes. *See Glenwood Farms, Inc. v. Ivey*, 229 F.R.D. 34, 35 (D. Me. 2005). Indeed, a court may even require the party who changed his or her deposition testimony to pay the expenses of the other side that are incurred in reopening the deposition (or taking a second deposition). *See* Fed. R. Civ. P. 26(c)(1)(B).

Second, the Ninth Circuit has extended the "sham" affidavit rule to deposition corrections, holding that Rule 30(e) deposition corrections may not be used to create an issue of fact by contradicting prior deposition testimony. *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005). In the context of considering a motion for summary judgment in which the non-moving party attempts to create an issue of fact through the tactical use of deposition corrections, the Ninth Circuit stated: "Rule 30(e) is to be used for corrective, and not contradictory changes." *Id.* at 1226. To justify striking a deposition correction as a "sham," however, the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (discussing the sham affidavit rule).

When determining whether deposition corrections are a "sham" or intended to create an issue of fact for summary judgment, the timing of the deposition changes may be informative. In *Hambleton*, the court affirmed the magistrate judge's decision to strike an errata sheet as a sham and a violation of Rule 30(e) when the deposition occurred in late 2001, the defendants filed a motion for summary judgment in January 2002, and the plaintiffs submitted the deposition corrections in February 2002. *Hambleton*, 397 F.3d at 1223-24. The court indicated that the

sequence of the deposition corrections, submitted after the motion for summary judgment was filed, was "seemingly tactical." *Id.* at 1225. The court further noted that in addition to filing the corrections after the 30-day deadline, the plaintiffs omitted a statement in the errata sheet "explaining the corrections, despite the fact that the plain language of the Rule requires that a statement giving reasons for the corrections be included," which was a second indication that the corrections were a "sham." *Id.* at 1224. "A statement of reasons explaining corrections is an important component of errata submitted pursuant to [Rule] 30(e), because the statement permits an assessment concerning whether the alterations have a legitimate purpose." *Id.* at 1224-25. Finally, the court acknowledged the magistrate judge's legitimate concern regarding the "extensive nature" of the deposition corrections. *Id.* at 1225.

Although the court in *Hambleton* affirmed the lower court's decision to strike the plaintiffs' deposition corrections based on the procedural requirements of Rule 30(e), the court left room for the possibility that in different circumstances, a small procedural error might not justify the exclusion of Rule 30(e) corrections. *See id.* at 1224. The court indicated that had it not been for the suspect timing of the errata, the lack of explanation, and the extensive nature of the corrections, "[m]issing the thirty day deadline by a mere day or two might not alone justify excluding the corrections in every case." *Id.* at 1224; *see also EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 266 n.12 (3d Cir. 2010) ("The natural language of the rule . . . does not preclude courts from allowing more time upon a prior request or forgiving minor untimeliness after the fact."); *BNSF Ry. Co. v. San Joaquin Valley R. Co.*, 2009 WL 3872043, at \*6 (E.D. Cal. Nov. 17, 2009) ("The *Hambleton* approach has been recognized as involving some discretion to enforce the thirty-day requirement strictly or not.").

In the pending case, Defendants have not requested leave to reopen Plaintiff's deposition and have not yet filed a motion for summary judgment. Thus, these additional considerations are not at issue. Because Plaintiff's original answers to the deposition questions remain part of the record and can be read at the trial, either as substantive or impeachment evidence, Defendants' motion to stike (ECF 60) is denied.

## CONCLUSION

Defendants' Motion to Strike Changes to Deposition Testimony (ECF 60) is DENIED.

**IT IS SO ORDERED**.

DATED this 15th day of May, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge